UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TRINITY TRIPKOVICH | CIVIL ACTION |
| VERSUS | NO. 13-6389 |
| JULIO RAMIREZ, ET AL. | SECTION "L" (3) |

**ORDER & REASONS**

Before the Court are Defendants' Motion to Exclude Testimony on Causation of Plaintiff's Expert, Gerald J. Gianoli, M.D. (Rec. Doc. 50) and Defendants' Motion to Exclude the Expert Report and Testimony of John Theriot as it Relates to his Opinion on Future Loss of Earnings Capacity (Rec. Doc. 51). Having reviewed the parties' briefs and the applicable law, the Court now issues this Order & Reasons.

I.   BACKGROUND

This case arises out of a motor vehicle accident that occurred on November 4, 2012 on Interstate 12 in Tangipahoa Parish. Plaintiff alleges that she was traveling on Interstate 12 when Defendant Julio Ramirez struck her from the rear and totaled her vehicle. Plaintiff alleges that Ramirez was operating his vehicle in the course and scope of his employment with Defendant NB Interstate Logistics, LLC. Plaintiffs further allege that Lancer Insurance Company issued automobile liability insurance that was in place at the time of the accident. Plaintiff claims that as a result of the accident she sustained serious and debilitating injuries to her brain and back. She asks to be compensated for past, present, and future pain and suffering, medical expenses, loss of enjoyment, and loss of wages.

Defendants removed the case to this Court pursuant to this Court's diversity jurisdiction. Defendants have now stipulated to liability but dispute damages, and trial is scheduled to proceed on July 6, 2015 solely on the issue of damages.

## II.   PRESENT MOTIONS

### A. Motion to Exclude Testimony on Causation of Plaintiff's Expert, Gerald Gianoli, M.D. (Rec. Doc. 50)

#### 1. Parties' Arguments

The Defendants argue that the Court should exclude Plaintiff's expert Dr. Gerard Gianoli's testimony on medical causation because his failure to review her prior medical records and rule out other causes of injury renders his testimony unreliable pursuant to Fed. Rule Evid. 702 and *Daubert*. (Rec. Doc. 50). Defendants contend that Plaintiff presented with symptoms of dizziness and nausea prior to her accident. Defendants argue that Plaintiff's medical history presents a myriad of other, potential causes of injury: Plaintiff 's head struck a windshield on December 30, 1999 and she was subsequently rendered unconscious; Plaintiff was involved in another car accident on April 27, 2010; Plaintiff had a history of chronic migraines; Plaintiff has suffered from bulimia since she was a freshman in high school; and after the November 2012 accident, Plaintiff went to the emergency room after she had "horsed around" with her boyfriend and was dropped her on her head. (Rec. Doc. 50-1 at 4-5). Defendants thus aver that Dr. Gianoli's analysis that the car accident caused Plaintiff's injuries should therefore be excluded because he failed to review her medical records and rule out these other possible causes of injury. As support for this argument, Defendants maintain that "[t]he Fifth Circuit Court of appeals has stated in medical causation cases that an expert should consider and exclude other possible causes of injury when forming his or her opinion." (Rec. Doc. 50-1 at 10) (citing *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 423 (5th Cir. 1987); *McNabney v. Lab Corp. of*

*America*, 153 F.App'x 293, 295 (5th Cir. 2005)). Defendants also argue that Dr. Gianoli's failure to consider the entirety of her medical records renders his methodology flawed and unreliable. (Rec. Doc. 50 at 10).

Plaintiff opposes the motion and argues that Dr. Gianoli's reliance on Plaintiff's representation of her medical history should not provide a basis for exclusion of his testimony, but rather should affect the weight assigned to that testimony and is proper material for cross-examination. (Rec. Doc. 53 at 3) (citing *Amigo Broadcasting, LP v. Spanish Broadcasting System, Inc.*, 521 F.3d 472, 485 (5th Cir. 2008)). Further, Plaintiff notes that Dr. Gianoli reviewed the prior medical records and testified during his deposition that those records did not change his opinion as to causation. (Rec. Doc. 53 at 5-7).

## 2. Law and Analysis

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. Rule 702 is in effect a codification of the United States Supreme Court's opinion in *Daubert v. Merrel Dow Pharmaceuticals*, 509 U.S. 579 (1993). In *Daubert*, the Supreme Court held that trial courts should serve as gatekeepers for expert testimony and should not admit such testimony without first determining that the testimony is both "reliable" and "relevant." *Id*. at 589.

The trial court is the gatekeeper of scientific evidence. *Daubert*, 509 U.S. at 596. It has a special obligation to ensure that any and all expert testimony meets these standards. *Id*. Accordingly, it must make a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and whether the reasoning or methodology can be properly applied to the facts in issue. *Id*. at 592-93. In making this assessment, the trial court need not take the expert's word for it. *Joiner*, 522 U.S. at 147. Instead, when expert testimony

is demonstrated to be speculative and lacking in scientific validity, trial courts are encouraged to exclude it. *Moore*, 151 F.3d at 279.

In satisfying its "gatekeeper" duty, the Court will look at the qualifications of the experts and the methodology used in reaching their opinions and will not attempt to determine the accuracy of the conclusion reached by the expert. The validity or correctness of the conclusions is for the fact finder to determine.

Scientific testimony is reliable only if "the reasoning or methodology underlying the testimony is scientifically valid," meaning that such testimony is based on recognized methodology and supported by appropriate validation based on what is known. *Id*. at 592-93. In *Daubert*, the Supreme Court set forth a non-exclusive list of factors to consider in determining the scientific reliability of expert testimony. *Id*. at 593-95. These factors are: (1) whether the theory has been tested; (2) whether the theory has been subject to peer review and publication; (3) the known or potential rate of error; (4) whether standards and controls exist and have been maintained with respect to the technique; and (5) the general acceptance of the methodology in the scientific community. *Id*. Whether some or all these factors apply in a particular case depends on the facts, the expert's particular expertise, and the subject of his testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 138 (1999).

In addition to the five factors laid out in *Daubert*, a trial court may consider additional factors in assessing the scientific reliability of expert testimony. *Black v. Food Lion, Inc.*, 171 F.3d 308, 312 (5th Cir. 1999). Some of these factors may include: (1) whether the expert's opinion is based on incomplete or inaccurate dosage or duration data; (2) whether the expert has identified the specific mechanism by which the drug supposedly causes the alleged disease; (3) whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded

conclusion; (4) whether the expert has adequately accounted for alternative explanations; and (5) whether the expert proposes to testify about matters growing directly out of research he or she has conducted independent of the litigation.  *See, e.g.*, *id.* at 313; *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 278-79 (5th Cir. 1998); *Christophersen v. Allied-Signal Corp.*, 939 F.2d 1106, 1114 (5th Cir. 1991); *Newton v. Roche Labs., Inc.*, 243 F. Supp. 2d 672, 678 (W.D. Tex. 2002).  Scientific testimony is relevant only if the expert's reasoning or methodology can be properly applied to the facts in issue, meaning that there is an appropriate fit between the scientific testimony and the specific facts of the case.  *Daubert*, 509 U.S. at 593.  Scientific evidence is irrelevant, however, when there is too great an analytical gap between the data and the opinion proffered.  *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

      The party seeking to introduce the expert testimony bears the burden of demonstrating that the testimony is both relevant and reliable.  *Moore*, 151 F.3d at 275-76.  The focus is not on the result or conclusion, but on the methodology.  *Id*. The proponent need not prove that the expert's testimony is correct, but must prove by a preponderance of the evidence that the methodology used by the expert was proper.  *Id*.

      The medical expertise of Dr. Gianoli is not at issue.  Defendants rather argue that Dr. Gianoli's testimony should be excluded because he lacked an adequate foundation for his opinion that the November 4, 2012 car accident caused Plaintiff's accident.  "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration."  *Viterbo*, 826 F.2d at 422 (citing *Dixon v. International Harvester Co.*, 754 F.2d 573, 580 (5th Cir. 1985)).  Further, a doctor's expert testimony "should not [be] excluded under *Daubert* solely on the

ground that his causation diagnosis was based only on his patient's self-reported history." *Cooper v. Carl A. Nelson & Co.,* 211 F.3d 1008, 1021 (7th Cir.2000).

Defendants principally rely on two cases as support for their argument, but those cases can be distinguished from the instant case. In *Viterbo v. Dow Chemical Co.*, the Fifth Circuit found a nontreating testifying doctor's testimony inadmissible when the doctor relied on plaintiff's oral medical history and failed to consider that the plaintiff had a family history of the same symptoms for which he claimed damages. 826 F.2d at 423. The Fifth Circuit also noted that the doctor had no scientific literature to support his position; the tests he performed did not establish a causal link between the plaintiff's symptoms and the alleged cause of injury; the doctor had no prior experience with the alleged cause of injury; and none of the plaintiff's treating physicians diagnosed the same cause of injury. *Id.* at 422. All of these factors lead the Fifth Circuit to conclude that "the source upon which [the] expert's opinion relies [was] of such little weight…that [the] testimony would not actually assist the jury in arriving at an intelligent and sound verdict." *Id.* This differs from the situation here, as Dr. Gianoli has extensive experience with similar causes of injuries, including car accidents and the alternative causes of injuries put forth by Defendants, and he performed extensive testing that supported his conclusions. Indeed, in his deposition, Dr. Gianoli listed a great number of tests that he performed while diagnosing the Plaintiff and detailed how he interpreted those results. (Rec. Doc. 53-1at 13-23; 28-30). This testimony therefore differs from *Viterbo* where the test results contradicted the physician's diagnosis.

Defendants also cite *McNabney v. Laboratory Corp. of America,* but *McNabney* also differs from the instant case. In *McNabney*, the Fifth Circuit excluded the testimony of plaintiff's treating physician and emphasized how the physician had not been provided with

plaintiff's medical history and how the physician had testified during her deposition that such information would have been important to her diagnosis. 153 F. App'x 293, 295 (5th Cir. 2005). Conversely, Dr. Gianoli reviewed Plaintiff's medical history during his deposition and testified that it did not change his opinion as to causation. (Rec. Doc. 53-1 at 54-64). The Court is therefore not persuaded by the reasoning in *McNabney*.

In sum, unlike the scenarios in *Viterbo* and *McNabney*, the Court concludes that the Defendants have not demonstrated that Dr. Gianoli's opinion so lacks "a reliable basis in the knowledge and experience of the discipline" as to fail to be assistance to a jury." *Daubert*, 509 U.S. at 592. Rather, the Court finds that Dr. Gianoli's reliance on Plaintiff's medical history constitutes a proper basis for cross examination rather than for exclusion of Dr. Gianoli's testimony.

### B. Motion to Exclude Report and Testimony of John Theriot as it Relates to his Opinion on Future Loss Earnings Capacity (Rec. Doc. 51)

#### 1. Parties' Arguments

Defendants ask this Court to exclude the report and testimony of John W. Theriot because he based his report on future loss earning capacity on Plaintiff's counsel's representation that Plaintiff would have no future earning capacity, and but for the injury, Plaintiff would have completed law school by age twenty-four (24). (Rec. Doc. 51-1 at 6). Based on these facts, Mr. Theriot prepared a report reflecting a loss based on earnings between $50,000 and $100,000 per year, for total damages of future loss earnings between $1,406,055-$2,812,108. Defendants highlight that Plaintiff's future occupation as an attorney is pure speculation, and Plaintiff's own vocational expert testified that becoming a lawyer was not a consideration based on Plaintiff's test results. Further, at the time of the accident, Defendants aver that Plaintiff had maintained a 2.50 grade point average and did not demonstrate any inclination of becoming an attorney.

Plaintiff opposes the motion and argues that Defendants' motion is moot because Mr. Theriot submitted a supplemental report to reflect Plaintiff's vocational expert's opinion. (Rec. Doc. 54 at 3). The supplemental report calculates her total future loss earnings at $84,817, a significant reduction from the initial figures of $1,406,055-$2,812,108.

Defendants reply with leave of Court. Defendants argue that Mr. Theriot's supplemental report constitutes a new report and is therefore untimely. (Rec. Doc. 63 at 2). Defendants note that Mr. Theriot failed to mention that his report would be supplemented when Defendants deposed him on May 8, 2015. (Rec. Doc. 63 at 2). Finally, Defendants contend that Mr. Theriot's report will not assist the trier of fact, as there is no difficult discounting but is rather puts forth a simple mathematical equation.

2. **Law and Analysis**

Regarding Mr. Theriot's first report, the Court finds that it is inadmissible because it is based on pure speculation. Plaintiff cites no evidence to support the proposition that she planned to go to law school. Looking to Mr. Theriot's second report, the Court agrees with Defendants that Mr. Theriot's report constitutes a new report, and Plaintiff submitted the report well past Plaintiff's expert report deadline of April 30, 2015. (Rec. Doc. 26). Further, Defendants deposed Mr. Theriot on May 8, 2015, and Defendants confined their questioning to Mr. Theriot's initial report because neither Mr. Theriot nor Plaintiff's counsel gave any indication that he would supplement his report. To allow Mr. Theriot to change the totality of the report on the eve of trial after Defendants' have already deposed him would result in significant prejudice to Defendants. Accordingly, the Court will grant Defendants' Motion and exclude Mr. Theriot's report, supplemental report, and corresponding testimony as it relates to his opinion on future loss of earnings capacity.

### III. CONCLUSION

For the aforementioned reasons, **IT IS ORDERED** that Defendants' Motion to Exclude Testimony on Causation of Plaintiff's Expert, Gerald J. Gianoli, M.D. (Rec. Doc. 50) is **DENIED**, and Defendants' Motion to Exclude the Expert Report and Testimony of John Theriot as it Relates to his Opinion on Future Loss of Earnings Capacity (Rec. Doc. 51) is **GRANTED**. Mr. Theriot's report, supplemental report, and any corresponding testimony regarding future loss of earnings capacity is hereby excluded.

New Orleans, Louisiana this 19th day of June, 2015.

_____
UNITED STATES DISTRICT JUDGE